IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| JEROME STEVENS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 CV 2107 |
| | ) | |
| CAPT. LES RIGGS and SHERIFF | ) | |
| PAT HARTSHORN, | ) | Judge Harold A. Baker |
| | ) | Magistrate Judge David G. Bernthal |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Jerome Stevens, Sr. alleges in this lawsuit that he was denied adequate medical care at the Vermilion County Jail, in violation of his constitutional rights. Specifically, Stevens alleges that there was a delay in his receiving an Aerobid inhaler to help treat his asthma. Stevens brings a claim for money damages pursuant to 42 U.S.C. § 1983 against Defendants Patrick Hartshorn, the Vermilion County Sheriff, and Les Riggs, a Captain with the Vermilion County Sheriff's Department.

Defendants are entitled to summary judgment because Stevens did not exhaust all administrative remedies as required by the Prisoner Litigation Reform Act before filing the instant case. Further, there is no evidence that Defendants were deliberately indifferent to Stevens' serious medical need; Stevens kept an Albuterol inhaler with him in his cell, was administered a nebulizer treatment when he so requested and was provided with the Aerobid inhaler once he provided the Jail with a valid public aid card. Further, neither Defendant was

personally involved in Stevens' medical treatment while at the Jail. Accordingly, Defendants Riggs and Hartshorn are entitled to summary judgment. This memorandum of law is submitted in support of Defendants' motion.

## UNDISPUTED MATERIAL FACTS

Stevens was diagnosed with asthma in 2002 (Defs.' Stmt. Facts ¶ 4). When he was booked into the Vermilion County Jail (the "Jail") on October 13, 2005, Stevens had with him two medications for his asthma – Albuterol and Aerobid – and was able to keep both with him in his cell at the Jail (Id. ¶¶ 1, 5, 7). Stevens used the Aerobid inhaler twice a day to prevent asthma symptoms and the Albuterol inhaler during an asthma attack (Id. ¶ 6).

Stevens ran out of the medicine in his Aerobid inhaler sometime in late October, 2005 (Id. ¶ 9). He requested a new Aerobid inhaler on October 29, 2005 (Id.). The Jail has no record that any personnel received this request (Id. ¶ 10). Inmates at the Jail are instructed to make medical requests in writing on forms provided by the administration (Id. ¶ 8). Inmates do make requests on regular paper, but there is no guarantee such requests made it to the proper individual or department (Id.).

The first medical request Nurse Lynn Galloway, the Director of Nursing at the Jail, received from Stevens was the one he wrote on November 10, 2005 (Id. ¶¶ 11, 12). In that request, Stevens stated that he had an Albuterol inhaler but that he needed a new Aerobid inhaler (Id. ¶ 13). He informed Nurse Galloway that he had a public aid card, which was expired, and that his wife would send a valid one to him in the mail (Id. ¶¶ 13, 16). The Jail does not stock Aerobid inhalers because they are very expensive and the majority of asthmatics at the Jail do not use them so they would likely be thrown away (Id. ¶ 15). Nurse Galloway needed Stevens' valid

public aid card in order to pay for a new Aerobid inhaler at the pharmacy (Id. ¶ 16). Because Stevens had an Albuterol inhaler with him and because Nurse Galloway did not receive any requests from Stevens informing her that he was in an emergency situation, Nurse Galloway felt that his medical condition was stable and that she could wait for his valid public aid card to order and pay for the inhaler (Id. ¶ 17).

On November 18, 2005, a Friday night at 6:30 p.m., Stevens submitted a medical request seeking a nebulizer treatment (Id. ¶ 18). Because there was no medical personnel at the Jail at that time, the request was forwarded to a Sergeant, who brought Stevens to the infirmary for a breathing treatment that was administered at 7:10 p.m. (Id. ¶ 19). During the nebulizer treatment, an asthmatic breathes in Albuterol through a mask that covers his nose and mouth until all of the medication is used up (Id. ¶ 20).

The fact that Stevens required a breathing treatment on November 18 did not lead Nurse Galloway to believe that Stevens' asthma was an emergency situation; asthmatics occasionally require such treatments when their inhalers are not adequate during an asthma attack (Id. ¶ 21). It was not unusual for a Correctional Officer to being Stevens for the nebulizer treatment because all asthmatics at the Jail can set up and administer the treatment themselves (Id. ¶ 22). Stevens did not request another nebulizer treatment while waiting for a new Aerobid inhaler (Id. ¶ 23).

Stevens spoke with Nurse Galloway sometime around Thanksgiving, at which time Nurse Galloway again told Stevens that she needed a valid public aid card to order an Aerobid inhaler (Id. ¶ 24). Stevens' wife sent to him at the Jail a valid aid card and Stevens provided it to Nurse Galloway on Friday, December 2, 2005 (Id. ¶ 25). The Jail doctor, Dr. Melvin Ehrhardt, ordered a prescription for the Aerobid inhaler and it was submitted to the pharmacy on Monday,

December 5, 2005 (Id. ¶ 25). The Jail received the Aerobid inhaler on December 7, 2005, and provided it to Stevens the next day, December 8, 2005 (Id. ¶ 26).

The nursing staff at the Jail takes respiratory problems very seriously; anytime an inmate appears to be in respiratory distress, the inmate is taken immediately to the emergency room (Id. ¶ 27). Stevens did not at any time indicate to Nurse Galloway that he was in respiratory distress (Id. ¶ 28). Further, Nurse Galloway did not at any time see Stevens in respiratory distress nor did anyone inform her that he was in respiratory distress (Id.). Nurse Galloway knew that, while waiting for the Aerobid inhaler, Stevens had an Albuterol inhaler with him in his cell and that when requested, he was provided with a nebulizer treatment (Id. ¶ 29).

Stevens received other medical treatment while at the Jail (Id. ¶¶ 30-33). On January 28, 2006, Stevens submitted an inmate request form complaining of a rash on his arm and was provided with hydrocortisone cream (Id. ¶ 30). On February 18, 2006, Stevens was again administered a nebulizer treatment after feeling no relief using his Albuterol inhaler (Id. ¶ 31). On February 25, 2006, Stevens submitted a medical request form to Nurse Galloway complaining of pain in his left eye and suggesting that it appeared to be a blood clot (Id. ¶ 32). Nurse Galloway conferred with staff from Chittick's Eye Care and was informed that it was most likely a broken blood vessel which would resolve itself (Id.). Nurse Galloway monitored the situation and it did resolve itself (Id.).

The Jail provides inmates a grievance procedure (Id. ¶ 33). As outlined in the Adult Orientation materials provided to inmates upon booking, inmates are to submit to a member of the correctional staff all grievances or complaints regarding any incident, condition, treatment or other matter pertaining to Jail rules and regulations, facility or staff, in writing on forms provided

by Jail administration (Id.). Stevens was provided with the Adult Orientation materials when he was booked into the Jail (Id. ¶ 34). Stevens did not submit to any member of the correctional staff any grievances or complaints during his incarceration (Id. ¶ 35). Further, he made no verbal requests, complaints or grievances to either Defendant Hartshorn or Defendant Riggs regarding his medical treatment (Id. ¶ 36). Stevens spoke about his asthma and his need for the Aerobid inhaler only with Nurse Galloway (Id.). Stevens left the Jail on March 23, 2006 (Id. ¶ 1).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file and/or affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The mere existence of factual disputes will not preclude the granting of a motion for summary judgment where the dispute does not involve a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). Material facts are identified by the substantive law involved, and to constitute a "genuine issue," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.* When the evidence is not significantly probative or is merely colorable, summary judgment is proper. *Id.* at 249-50.

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE STEVENS FAILED TO EXHAUST ALL ADMINISTRATIVE REMEDIES

Initially, summary judgment is appropriate here because Stevens did not exhaust the administrative remedies available to him at the Jail. Under the Prisoner Litigation Reform Act ("PLRA"), "no action shall be brought with respect to prison conditions under Section 1983 ... by

a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (West 2006).  To this extent, the PLRA seeks to afford correctional officials time and opportunity to address complaints internally before allowing the initiation of a lawsuit.  *See Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006).  Thus, two main objectives are satisfied: (1) the jail is allowed to correct its own mistakes before being haled into court and (2) the claim may be resolved much more quickly and economically.  *See id.* at 2385.

The Seventh Circuit takes a strict compliance approach to exhaustion.  *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  To exhaust administrative remedies, an inmate must file complaints and appeals in the place and at the time the prison's administrative rules require.  *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  Such exhaustion is mandatory, even when the relief sought cannot be granted by the administrative process, *see Woodford*, 126 S. Ct. at 2382-83, or where the prisoner believes that exhaustion is futile.  S*ee Dole*, 438 F.3d at 809.  The inmate is required to give the prison administration an opportunity to fix the problem or to reduce the dangers complained of even if he is not fully satisfied by the prison's solution.  *See Pozo*, 286 F.3d at 1024.

The Jail's grievance procedure, as outlined in the Adult Orientation materials provided to inmates upon booking, requires inmates to submit to a member of the correctional staff grievances or complaints regarding any incident, condition, treatment or other matter pertaining to the jail rules and regulations, facility or staff.  Stevens knew about this grievance procedure as he was provided with the Adult Orientation materials when he was booked in to the Jail.

Stevens, however, did not file a single grievance with any correctional officer complaining of the delay in getting his Aerobid inhaler, or any other medical treatment inadequacy.

Since Stevens did not avail himself of the grievance procedure available at the Jail regarding a claim of inadequate medical treatment, namely the delay in getting an Aerobid inhaler, Defendants did not have an opportunity to address Stevens' complaint internally and possibly correct any mistake. Accordingly, Defendants' motion for summary judgment should be granted.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY DID NOT VIOLATE STEVENS' CONSTITUTIONAL RIGHTS

Even if this Court were to determine that Stevens exhausted all administrative remedies, summary judgment is nonetheless appropriate because the record shows that Stevens' constitutional rights were not violated by any Jail personnel. The Eighth Amendment's protection against cruel and unusual punishment shields an inmate from a prison official's deliberate indifference to a substantial risk of serious injury or medical need. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). This means that prison officials cannot intentionally deny or delay access to medical care. *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000). Although the Eighth Amendment does not apply directly to pretrial detainees like Plaintiff, they are nonetheless afforded the same standard of protection under the Due Process Clause of the Fourteenth Amendment. *Id.*

To prevail on a constitutional claim for failure to provide medical care, a pretrial detainee must satisfy both an objective and subjective component. First, to satisfy the objective element, he must show that the deprivation alleged was a "sufficiently serious" medical need. *Farmer v.*

*Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). A serious medical need is one that is "life threatening or poses a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). The need must be so obvious that even a lay person would easily recognize that it requires a doctor's attention. *Chapman*, 241 F.3d at 845.

Second, as to the subjective element, the pretrial detainee must show that the defendant was deliberately indifferent to his medical needs. *Zentmyer*, 220 F.3d at 810. This requires a finding of more than mere negligence or even gross negligence. *Chapman*, 241 F.3d at 845. Deliberate indifference requires a showing that the official either wanted harm to come to Plaintiff or must have been completely unconcerned about Plaintiff's welfare in the face of substantial medical harm. *See McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This standard creates a "high hurdle" for litigants suing correctional officials. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

    A.    **Stevens' injury was not sufficiently serious.**

The Seventh Circuit has held that asthma can constitute a serious medical condition, "depending on the severity of the attacks." *Raunio v. Hahn*, No 06 C 163, 2007 WL 675737, at *4 (W.D. Wis. Feb. 26, 2007) (citing *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005)). Stevens' condition here, however, was not sufficiently serious so as to implicate constitutional protection. This is not a case in which an inmate did not receive his asthma inhaler during an asthma attack or was not provided a nebulizer treatment when requested. Stevens claims that he was injured by not receiving an Aerobid inhaler for everyday use. Such injury does not implicate

constitutional protection because the undisputed facts show that Stevens had other means to control his asthma; he had an Albuterol inhaler with him in his cell at all times and he received a nebulizer treatment when the Albuterol was insufficient. Because Stevens' alleged injury does not amount to a serious medical need, Stevens fails the first, objective prong of the constitutional analysis. Accordingly, Defendants' motion for summary judgment should be granted.

### B. Defendants were not deliberately indifferent to Stevens' medical needs.

Even if this court were to conclude that Stevens' injury was sufficiently serious, summary judgment should be granted because the undisputed facts do not support an inference that Defendants were deliberately indifferent. Stevens' claim is asserted against Defendants in their individual capacities only. Therefore, in order to prevail, Stevens must establish that Defendants Riggs and Hartshorn directly caused the alleged deprivation at issue. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Stevens fails to meet this high hurdle.

First, § 1983 does not allow for actions against individuals merely because of their supervisory role of others; therefore, liability can only be based on a finding that Defendants caused the deprivation at issue. *See id.* (internal quotations omitted). Although direct participation is not necessary, there must at least be a showing that Defendants "acquiesced in some demonstrable way in the alleged constitutional violation." *Id.* Therefore, to prevail on his claim, Stevens must establish that Defendants Riggs and Hartshorn knew that not having an Aerobid inhaler posed an excessive risk to Stevens' health and facilitated the delay, approved it, condoned it or turned a blind eye to it. *See Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006).

Stevens has failed to make any such showing here. The record establishes that neither Defendant Riggs nor Defendant Hartshorn was directly or personally involved in Stevens'

medical care.  It is undisputed that Stevens spoke only with Nurse Galloway about his asthma; he did not speak with either Defendant about his medical treatment, let alone his immediate need for an Aerobid inhaler.  Further, the record contains no evidence tending to show that Defendants knew of Stevens' medical needs from a secondary source; Stevens did not file a single grievance or complaint during his incarceration at the Jail.  Overall then, the record contains absolutely no evidence to show that Defendants knew of Stevens' requests for the Aerobid inhaler much less ignored them.

Second, the record is devoid of evidence tending to show deliberate indifference by any individual at the Jail.  It is undisputed that Stevens dealt only with Nurse Galloway in requesting the Aerobid inhaler.  In his November 10, 2005, request, Stevens stated that he had a public aid card but that his wife would send to the Jail an up-to-date card.  Stevens further informed Nurse Galloway that he had an Albuterol inhaler with him in his cell.  Because she knew that Stevens had an Albuterol inhaler in his cell and because he did not submit any requests informing her that he was in an emergency situation, Nurse Galloway had no reason to believe that Stevens would be in any respiratory distress.  In Nurse Galloway's medical opinion, Stevens' condition was stable and she felt that she could wait for his valid public aid card to order and pay for the Aerobid inhaler.

In any event, the delay in providing Stevens with an Aerobid inhaler does not constitute evidence of deliberate indifference on the part of any jail officials.  To prevail, Stevens must support such a claim with "verifying medical evidence" to establish that the delay detrimentally affected him.  *Truly v. Comp. Health Care Serv.*, No. 03-1178, 2006 WL 2510192, at *5 (C.D. Ill. Aug. 29, 2006) (citing *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)).  Here,

10

Stevens has failed to present any evidence to show that the delay in getting his Aerobid inhaler contributed to any injuries. It is undisputed that Stevens was able to and did kept an Albuterol inhaler in his cell at all times and that he was provided with a nebulizer treatment when he requested it.

The fact that Stevens required the nebulizer treatment on November 18, 2005, fails to satisfy his burden. It is undisputed that asthmatics occasionally require such treatments when their inhalers are not adequate during an asthma attack. There is no evidence that Stevens' need for the nebulizer treatment resulted from his failure to use an Aerobid inhaler. Such a claim would be further discounted by the fact that on February 18, 2006, more than two months after Stevens was provided with the Aerobid inhaler and presumably used it as directed, he was again administered a nebulizer treatment. The fact that Stevens required a nebulizer treatment while he was using the Aerobid contradicts any notion that his needing a nebulizer treatment on November 18 was an injury resulting from not receiving the Aerobid. Accordingly, Stevens has failed to show that the delay in receiving his Aerobid inhaler had a detrimental impact on his health. *See Truly*, 2006 WL 2510192, at *6.

Again, deliberate indifference means that the officials must have either wanted harm to come to Stevens or must have been completely unconcerned about Stevens' welfare in the face of a substantial risk. *See McGill*, 944 F.2d at 347. In this instance, one cannot say that any action on Nurse Galloway's part meets this high standard. Nurse Galloway believed that Stevens' asthma was stable; while he requested a new Aerobid inhaler, he did not submit any written requests stating that he was in an emergency situation or in respiratory distress. Further, Nurse Galloway knew that Stevens had the use of an Albuterol inhaler whenever he needed it in his cell

and that he could be administered a nebulizer treatment if needed. Accordingly, the record contains no evidence from which it could be inferred that any Jail personnel was aware that Stevens could face a substantial risk of harm if he was not immediately provided the Aerobid inhaler.

Stevens has failed to produce any evidence to support a finding that Defendants Riggs and Hartshorn, or any Jail personnel for that matter, consciously disregarded his medical needs or that they caused or participated in a medical deprivation resulting in a constitutional violation. Accordingly, Defendants' motion for summary judgment should be granted.

## CONCLUSION

For the foregoing reasons, Defendants Les Riggs and Patrick Hartshorn respectfully request that this Honorable Court grant summary judgment in their favor and against Plaintiff.

Respectfully submitted,

**s/ Zrinka Rukavina**
ZRINKA RUKAVINA, Atty Bar No. 06287249
MICHAEL W. CONDON, Atty Bar No. 06192071
Attorney for Defendants
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone: 630-773-4774
Fax: 630-773-4851
zrukavina@hcbattorneys.com
mcondon@hcbattorneys.com

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| JEROME STEVENS, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 CV 2107 |
| | ) | |
| CAPT. RIGGS and | ) | Judge Harold A. Baker |
| PAT HARTSHORN, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 19, 2007, I electronically filed the foregoing ***Memorandum of Law in Support of Defendants' Motion for Summary Judgment*** with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by certified mail with the United States Postal Service the document to the following non CM/ECF participant:

    **TO:**   Jerome Stevens, Sr.  - B30889
               Sheridan Correctional Center
               Inmate Mail
               P.O. Box 38
               Sheridan, IL 60551
               ***Pro Se***

by depositing a copy of same in the U.S. Mail at 333 Pierce Road, Itasca, Illinois on October 19, 2007, before 5:00 p.m., with the proper postage prepaid.

                                              **s/ Zrinka Rukavina**
                                              ZRINKA RUKAVINA, Atty Bar No. 06287249
                                              MICHAEL W. CONDON, Atty Bar No. 06192071
                                              Attorney for Defendants
                                              HERVAS, CONDON & BERSANI, P.C.
                                              333 Pierce Road, Suite 195
                                              Itasca, IL 60143-3156
                                              Phone:  630-773-4774
                                              Fax:  630-773-4851
                                              zrukavina@hcbattorneys.com
                                              mcondon@hcbattorneys.com